**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DESIGN METALS,<br><br>                    Plaintiff,<br><br>          v.<br><br>QUALITY PERFORATING, INC.,<br><br>                    Defendant. | Civil Action No. 3:19-cv-17276-FLW-DEA<br><br><br><br>**OPINION** |

**WOLFSON, Chief Judge**:

This case arises from the termination of a sales contract between Plaintiff Design Metals ("DM" or "Plaintiff") and Defendant Quality Perforating, Inc. ("QPI" or "Defendant"), which has allegedly resulted in unpaid commissions. Before the Court is a Motion to Dismiss filed by Defendant, contending that the forum selection clause in the parties' Sales Representative Agreement requires dismissal on *forum non conveniens* grounds. For the following reasons, the Motion to Dismiss is **GRANTED** and Plaintiff's claim is dismissed without prejudice.

### I. Factual Background and Procedural History

On August 1, 2013, DM entered into an exclusive Sales Representative Agreement ("the Agreement") with QPI to market and sell QPI's products for a 3% to 13% commission, depending on the type of sale, in eight territories. *See* Compl. Ex. A. The Agreement contains 14 clauses encompassing "the entire Agreement between the parties" as to the sale and promotion of QPI's products. *Id.*

Clause 13 of the Agreement is a forum selection clause, which states that the Agreement shall be "interpreted and governed by the laws of the state of Pennsylvania" and that "any disputes regarding [this Agreement] shall be filed and decided by the Court of Common Pleas of Lackawanna County, Pennsylvania."[1] *Id.* On March 5, 2019, QPI ended its contractual relationship with DM. *See* Compl. Ex. A. According to DM, QPI stated in a letter that "all commissions due will be reconciled." *Id.*

DM claims that it was not paid for the commissions due, and thus, it filed this action on August 28, 2019. Instead of asserting contract-based claims, DM contends that QPI violated Title 2A:61A-2 of the New Jersey State Code. *See* Compl. ¶¶ 8, 10-16. That provision requires a principal to pay its representatives for commissions earned as a result of the representation within 30 days of either the date the contract is terminated or the date the commissions are due, whichever is later. N.J.S.A. 2A:61A-3 imposes treble damages, attorney's fees, and court costs on principals who violate N.J.S.A. 2A:61A-2. Under these provisions, DM seeks up to $180,000 plus fees and costs. QPI filed the present dismissal motion on November 21, 2019, arguing that the forum selection clause in the Agreement requires DM to file its action in state court in Pennsylvania. DM opposes the motion on the grounds that its statutory claim is beyond the scope of the forum selection clause.

## II. Standard of Review

When reviewing a motion to dismiss on the pleadings, the Court will "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."

---

[1] The Agreement as drafted is missing the bracketed words, "this Agreement." The parties agree those words should have been included. *See* Dkt. 6-1; Brief for Defendant at 4-5.

*Phillips v. County of Alleghany*, 515 F.3d 224, 233 (3d Cir. 2008). When a forum selection clause requires suit to be filed in a state forum rather than a federal forum, the appropriate enforcement mechanism is the *forum non conveniens* doctrine. *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas*, 571 U.S. 49, 60-61 (2013). To the extent the forum selection clause in the Agreement applies to DM's statutory claim and is enforceable, dismissal on the grounds of *forum non conveniens* may be warranted.

## III. Discussion

### A. *Scope of the Forum Selection Clause*

The threshold question is whether the forum selection clause in the Agreement applies to Plaintiff's non-contractual claim under N.J.S.A. 2A:61A-2. Plaintiff argues that the forum selection clause does not reach its claim, because it is based on an independent statutory provision, which is not a "dispute regarding [this Agreement]." *See* Compl. ¶ 13. In response, Defendant argues that Plaintiff's statutory claim arises out of the Agreement, because the claim would not accrue but for the existence of the Agreement. *See* Brief for the Defendant at 5.

Interpreting the scope of a forum selection clause "is an analytically distinct concept" from determining whether the clause is enforceable. *Collins on Behalf of Herself v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017). In diversity cases such as this one, state contract law applies to interpretation questions, whereas federal law applies to questions of enforcement. *Id.* at 180-83; *see also John Wyeth & Bro. Ltd. V. CIGNA Int'l Corp.*, 119 F.3d 1070, 1073 (3d Cir. 1997) ("The question of the scope of a forum selection clause is one of contract interpretation."). The Court must therefore determine which state's contract law applies. The choice-of-law rules in the forum state govern that question, "even where the contract contains a choice-of-law clause." *Id.* (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)); *see also Kruzits v. Okuma Mach.*

3

*Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994). Accordingly, the Court looks to New Jersey's choice-of-law rules to decide which state's contract law applies here.

Under New Jersey's choice-of-law rules, "[o]rdinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice." *Collins*, 874 F.3d at 183-84 (citing *Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 130 N.J. 324, 341 (1992)). The parties' contractual choice will not dictate which state's law applies, however, if "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." *Instructional Sys.*, 130 N.J. at 342.

It is clear that in the present case Pennsylvania contract law governs the parties' Agreement, and correspondingly, the question whether the Agreement's forum selection clause applies to Plaintiff's statutory claim.[2] There is no dispute that this matter has a substantial relationship to Pennsylvania. Defendant resides there, the Agreement was negotiated there, and Pennsylvania is one of eight territories covered in Clause 1. Plaintiff also has not shown why applying Pennsylvania contract law to the scope of the forum selection clause in the Agreement would contradict "fundamental" New Jersey policy, or why New Jersey has a materially greater interest in applying its contract law. *See Collins*, 847 F.3d at 184-85. In fact, New Jersey has

---

[2] In finding that Pennsylvania contract law governs the validity of the forum selection clause at issue here, the Court does not express any views on the question of whether Plaintiff may assert, based on the nature of the parties' contractual relationship, a cause of action pursuant to N.J.S.A. 2A:61A-2.

comparatively little interest, because neither Plaintiff nor Defendant resides there, and this state is one of many territories covered by the Agreement. As such, the Court finds that Pennsylvania contract law applies.

Having made that determination, the Court next examines the substance of Pennsylvania state law. The text of the Agreement is the starting point. *See Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. Super. 1982) ("[W]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed."). The forum selection clause, here, states that the Agreement shall be "interpreted and governed by the laws of the state of Pennsylvania" and that "*any* disputes *regarding* [this Agreement] shall be filed and decided by the Court of Common Pleas of Lackawanna County, Pennsylvania" (emphasis added). While there are no relevant Pennsylvania cases interpreting the word "regarding," Pennsylvania courts have on many occasions broadly defined analogous language, such as "arising out of" and "related to." *See, e.g.*, *Marano v. Fulton Bank, N.A.*, 2014 WL 10558604, at *4 (Pa. Super. Oct. 29, 2014) (broadly defining the term "[a]rise" as "to originate from a specified source") (quoting Webster's Third International Dictionary 117 (1971)); *Mfrs. Cas. Ins. Co. v. Goodville Mut. Cas. Co.*, 170 A.2d 571, 573 (Pa. Super. 1961) (broadly defining the term "arising out of" in an insurance policy as "causally connected with, not proximately caused by," and describing the term as "broad, general, and comprehensive"); *Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1273 (Pa. Super. 2004) (broadly construing a contract requiring the parties to arbitrate "[a]ny . . . Claim arising out of or related to the Contract" to cover an indemnity claim, because "[a]ppellees aver that the injury arose from the contract"); *McCabe v. Old Republic Ins. Co.*, 228 A.2d 901, 903 (Pa. Super. 1967) (finding the phrase "arising out of" to be "clear and definite" and adopting a construction that does not "conflict[] with the plain language"); *Marano*,

5

2014 WL10558604, at *5 (finding the phrase "[a]rising out of" to be "an unambiguous, clear, and definite phrase").

The Court finds that, under Pennsylvania contract law, the term "regarding" in the Agreement should be construed in the same manner as the terms "arising out of" and "related to." Like those terms, the word "regarding" is defined broadly, as "with respect to" or "concerning." *See* Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/regarding (last visited May 31, 2020). Other courts have interpreted "regarding" in a similarly broad manner. *See Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (broadly interpreting a forum selection clause with the language "regarding interpretation or fulfillment of the contract," primarily because of the word "regarding" as a modifier to the disputes arising under the contract); *Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*, 109 F. Supp. 2d 1236, 1255 (S.D. Cal. 2000); *see also TriState HVAC Equip., LLP v. Big Belly Solar, Inc.*, 752 F. Supp. 2d 517, 536 (E.D. Pa. 2010). Moreover, the word "*any*" in the forum selection clause makes no distinction between different forms of action that may or may not trigger the clause, evincing a broad interpretation. *See, e.g.*, *Autochoice Unlimited, Inc. v. Avangard Auto Finance, Inc.*, 9 A.3d 1207, 1212 (Pa. Super. 2010). Finally, the clause contains the word "dispute," which sweeps more broadly than other words the parties could have chosen, such as "claim." *See, e.g.*, *John Wyeth*, F.3d at 1074.

Next, in examining the content of Pennsylvania contract law, the Court must consider how Pennsylvania courts have decided cases involving forum selection clauses *vis-à-vis* non-contractual claims. Pennsylvania courts have held that forum selection clauses with broad language, as here, reach various non-contractual claims, and they have set the boundaries on the types of non-contractual claims a forum selection clause can reach. *See Creative Retail Communications, LLC v. Kinser*, No. 1710EDA2018, 2019 WL993120, at *6 (Pa. Super. Feb. 28,

2019); *Morgan Trailer Mfg. Co. v. Hydraroll, Ltd.*, 759 A.2d 926, 931-32 (Pa. Super. 2000); *Marano*, 2014 WL10558604, at *4-5; *Autochoice*, 9 A.3d at 1211-12. Generally, for a forum selection clause to apply to a non-contractual claim, the subject matter of the contract containing the forum selection clause—or the nature of the ongoing business relationship that the contract creates—must align with the subject matter of the plaintiff's claim, depend on the terms of the contract, or otherwise have some "discoverable relationship" with the contract. *See, e.g.*, *Morgan*, 759 A.2d at 931-32. Pennsylvania courts have referred to such an approach as the "gist of the action." *See Autochoice*, 9 A.3d at 1211-12. This doctrine prevents, for example, a plaintiff from "re-casting ordinary breach of contract claims into tort claims" to avoid an otherwise valid forum selection clause where the tort claims rely on proof of breach of contract and derive from the contractual relationship. *Id.*

However, non-contractual claims do not trigger forum selection clauses merely because "absent the contract, all counts would fail." *See Morgan*, 759 A.2d at 931. If, for example, a contract "involve[s] the sale of products," then a forum selection clause does not reach plaintiff's non-contractual claims for "tortious interference with employment relationship, misappropriation of trade secrets, tortious interference with customers, unfair competition, conspiracy, and punitive damages," because each claim is not related to the subject of the contract: product sales. *Morgan*, 759 A.2d at 931-32; *see also Creative Retail*, 2019 WL993120, at *6 (declining to apply a forum selection clause to claims for "Defamation, False Light Invasion of Privacy, and Commercial Disparagement," because they were not "related to" the contract or ongoing business relationship between the parties, which was a music subscription); *cf. Marano*, 2014 WL10558604, at *3 (rejecting the argument that the "subject matter of th[e] complaint" exceeded the "scope" of the promissory notes at issue). Simply having a contract "does not mean that all future relations . . .

are somehow connected to that contract," *Morgan*, 759 A.2d at 932, and "[m]erely because the parties entered into a contract does not mean the contract's terms govern all disputes." *Creative Retail*, 2019 WL993120, at *6.

What is more, in cases involving the application of forum selection clauses to non-contractual claims, Pennsylvania courts often rely on Third Circuit and district court decisions broadly applying forum selection clauses. *See Morgan*, 759 A.2d at 930-31 (citing, among others, *John Wyeth*, *Crescent Int'l*, and *Hensel*). In *John Wyeth*, the Third Circuit applied a forum selection clause with the language "any dispute arising under or out of or in relation to this Agreement" to a claim for payment of defense costs, because of the "logical and casual connection" between the parties' dispute and their agreement. 119 F.3d 1070 at 1074. In *Crescent Int'l, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943 (3d Cir. 1988), the Third Circuit applied a forum selection clause with the language "any litigation upon any of [its] terms . . . shall be maintained in a state or federal court in Miami, Florida," to RICO, fraud, unfair competition, and tortious interference claims. *Id.* at 944-45. Importantly, the court in *Crescent Int'l* explained that "pleading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms . . . . The narrow interpretation suggested by Crescent would permit avoiding a forum selection clause by simply pleading non-contractual claims in cases involving the terms of a contract containing the parties' choice of forum." *Id.* at 944-46. And, finally, in *Hensel v. Terra Nova Ins. Co.*, 1997 WL602747 (E.D. Pa. Sept. 19, 1997), the court applied a forum selection clause to a tort claim because of the clause's broad language: "in the event of the failure . . . to pay . . . Underwriters will submit to the jurisdiction of any court of competent jurisdiction within the United States." *Id.* at *2.

Based on the foregoing discussion, while, here, Plaintiff only raises a statutory claim, that alone does not elevate the claim beyond the scope of the forum selection clause under Pennsylvania law. Rather, Plaintiff's claim bears the necessary relationship to the Agreement and is therefore subject to the forum selection clause. The nature of the Agreement is the sale of products and commissions. Clause 7 sets forth a detailed commission schedule. Clauses 8 and 9 provide sales support for Plaintiff as an agent. Clause 6 imposes a best-efforts requirement on Plaintiff. Clauses 1-5 define what products Plaintiff can sell, where, what representations it can make during sales, and the limits of its authority as seller. Plaintiff's claim pertains exclusively to same subject matter, implicates the same series of transactions and terms, and depends on the very ongoing business relationship that the Agreement creates.

Indeed, the ties between Plaintiff's claim and the Agreement are substantial. Plaintiff's claim "arises out of the contractual relationship" itself—specifically the termination of that relationship. *Cf. Morgan*, 759 A.2d at 931-32. Plaintiff's very "injury arises from" Defendant's alleged breach of contract. *See Smay*, 864 A.2d at 1273. In that regard, Plaintiff's cause of action depends on proof of breach, and evidence of the contract and the parties' course of conduct are elements of Plaintiff's claim. *See id.* at 1275; *see also Autochoice*, 9 A.3d at 1211-12. Moreover, Plaintiff's claim is premised on the terms of the contract, Defendant's obligation to pay under the statute derives from those same terms, and Plaintiff seeks to vindicate a right that exists because of the contractual relationship in the first instance. *See Autochoice*, 9 A.3d at 1211-12; *Morano*, 2014 WL10558604, at *5. In other words, Plaintiff's claim "originates from" the Agreement, in that the claim and the Agreement encompass the same business relationship, and that Defendant's alleged breach is the factual basis for Plaintiff's cause of action. *See id.*; *Goodville*, 170 A.2d at 573 (suggesting only a "casual[] connection" between contract and claim is required under state

law). Accordingly, the Court concludes that the forum selection clause in the Agreement reaches Plaintiff's statutory claim, and the claim is a "dispute regarding [this Agreement]."

### B. *Enforceability of the Forum Selection Clause*

Next, the Court decides whether the forum selection clause in the Agreement is enforceable under federal law. *See Collins*, 847 F.3d at 180-83; *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995). A court examining the enforceability of a forum selection clause considers whether enforcing the clause against the plaintiff would be "'unreasonable' under the circumstances." *Collins*, 847 F.3d at 181 (citing *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972))). Plaintiff has not raised the enforceability of the forum selection clause here. For instance, Plaintiff has not argued that filing its action in Pennsylvania state court "will be so gravely difficult and inconvenient that [it] will for all practical purposes be deprived of [its] day in court." *See M/S Bremen*, 407 U.S. at 18, 92. Nor has Plaintiff claimed that enforcing the forum selection clause will "contravene a strong public policy" of New Jersey. *Id.* at 15. The Court, therefore, concludes that the forum selection clause in the Agreement is enforceable.

### C. *Dismissal on Forum Non Conveniens Grounds*

Because the forum selection clause in the Agreement covers Plaintiff's statutory claim and is enforceable, the Court turns, lastly, to the application of the *forum non conveniens* doctrine. *Atlantic Marine*, 571 U.S. at 60-61 (*forum non conveniens* has "'continuing application in federal courts'" where a forum selection clause points to a nonfederal, state forum) (quoting *Sinochem Intern. Co. Ltd. V. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430 (2007)). The appropriate remedy under *forum non conveniens* is dismissal. *Id.* at 60 (noting that 28 U.S.C. § 1404(a) merely replaces the "the traditional remedy of outright dismissal with transfer" when a forum selection

clause points to a *federal* forum); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981) (noting "[a] dismissal for *forum non conveniens* is committed to the sound discretion of the trial court").

Under *forum non conveniens* doctrine, the Court balances private interest and public interest factors. *Atlantic Marine*, 571 U.S. at 63. The Third Circuit has enumerated various public and private interests. *See Jumara*, 55 F.3d at 879. Private interests include plaintiff's choice of venue, defendant's preference, where the claim arose, convenience to the parties, availability of witnesses, and the location of evidence. *Id.* Public interests include the ability of each forum to enforce the judgment, practical considerations that would make trial more expeditious such as court congestion, local interest in deciding the dispute, and familiarity with state law in diversity cases. *Id.*; *see also Atlantic Marine*, 571 U.S. at 62, n.6; *Piper Aircraft*, 454 U.S. at 241, n.6.

This inquiry is limited where there is a valid forum selection clause. "[A] valid forum-selection clause is given controlling weight in all but the most exceptional cases," because the plaintiff bears the burden of showing why a court should not enforce the clause, "[t]he private interest factors weigh entirely in favor of the preselected forum," and the plaintiff's choice of forum "merits no weight." *Atlantic Marine*, 571 U.S. at 63. The Third Circuit has advised that in the context of a valid forum selection clause, courts need only consider "the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable," and public interest factors. *Collins*, 847 F.3d at 186. Such considerations will "rarely defeat" a dismissal motion. *Atlantic Marine*, 571 U.S. at 51.

Turning to the present case, Plaintiff has not explained why *any* public interest factor favors forum in New Jersey rather than the preselected Pennsylvania state forum, or attempted to "dispute[] the availability of [that] forum to hear [its] claim," despite its "heavy burden" to do so under *Atlantic Marine*. *Collins*, 847 F.3d at 186-87. Independently, the Court finds that the public

interest factors favor dismissal. New Jersey federal courts are some of the most congested in the country. *See In re Howmedica Osteonics Corp.*, 867 F.3d 390, 402, n.7 (3d Cir. 2017) (explaining "judicial economy considerations to be a distinct, cognizable public interest"); *Collins*, 847 F.3d at n.9. Defendant resides in Pennsylvania, but no party resides in New Jersey. *Cf. Print Data Corp. v. Morse Fin. Inc.*, 2002 WL1625412, at *8 (D.N.J. July 17, 2002) ("As a resident of New Jersey, plaintiff's choice of forum must be accorded great weight."). And, finally, Pennsylvania courts are the more appropriate forum to dispense and resolve Pennsylvania contract law. Accordingly, Plaintiff must file its suit in Pennsylvania state court, and its claim is dismissed without prejudice.


**DATED**: June 3, 2020                                    /s/          Freda L. Wolfson
                                                                         Freda L. Wolfson
                                                                         U.S. Chief District Judge